Filed 10/8/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JULIE ANN WATSON, <br><br> Defendant and Appellant. | D061668 <br><br><br> (Super. Ct. No. JCF21457) |

APPEAL from a judgment of the Superior Court of Imperial County, Christopher W. Yeager, Judge. Affirmed.

Cynthia A. Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael T. Murphy and Sabrina Y. Lane-Erwin, Deputy Attorneys General, for Plaintiff and Respondent.

The defendant in this case was driving an off-road vehicle at 60 miles an hour in sand dunes in Imperial County at 10:30 in the evening. The defendant did not have her headlights on, and she had a blood alcohol concentration (BAC) of 0.18/0.17. The

defendant struck the rear of a much slower moving four-wheel all-terrain vehicle (quad), which was being driven in the dunes by a 15 year old. The 15 year old was thrown from the quad and suffered severe injuries to his leg that required multiple surgeries and left him with a limp.

The defendant pled nolo contendre to one count of driving with a BAC of 0.08 or greater and causing bodily injury. (Veh. Code, § 23153, subd. (b).) At a restitution hearing under Penal Code section 1202.4, subdivision (b), the trial court declined to apply comparative fault principles and awarded the victim the entire amount of his medical expenses, which exceeded $96,000.

We find no abuse of discretion in the trial court's unwillingness to employ civil comparative fault principles in making its restitution order. Although under extraordinary circumstances such principles may be useful to a trial court in determining the amount of restitution (see *People v. Millard* (2009) 175 Cal.App.4th 7, 41-42 (*Millard*)), there is no requirement in Penal Code section 1202.4 that they be employed in all cases where a defendant, although guilty of a crime, did not act intentionally. Here, the record fully supports the trial court's award of the victim's substantial medical expenses. Accordingly, we affirm the trial court's restitution order.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Offense*

Around 10:30 on the evening of November 2, 2007, Stormey James Trammel, who was then 15 years old, was riding his quad on the top of a hill in the Imperial County dunes. According to Trammel, he was driving the quad about 15 miles an hour.

2

Trammel saw what is known as a sand rail or dune buggy, without any headlights on, coming from behind him at a high rate of speed; Trammel veered to his left but was unable to avoid being struck by the sand rail and was thrown from his quad.

The sand rail was being driven by defendant and appellant Julie Ann Watson. According to a statement she gave at the scene, Watson was driving the sand rail at approximately 60 miles an hour up the hill when her passenger yelled to her to watch out for the quad in front of them. Watson put on her brakes, and her sand rail hit the back of Trammel's quad. Watson said she saw Trammel flying off his quad. Watson believed the sand rail was going about 30 miles an hour by the time she hit Trammel.

At the scene, Watson's breath smelled of alcohol, her eyes were bloodshot, her gait was unsteady and her speech was slurred. Watson admitted consuming an eight-ounce cocktail and some vodka. The responding California Highway Patrol officer attempted to perform a field sobriety test, but Watson was unable to follow the officer's instructions.

Watson was arrested and transported to a facility where she consented to a breathalyzer test. As we indicated at the outset, the breathlyzer showed a BAC of 0.18/0.17.

Trammel was taken to a local hospital where surgery was performed on his severely shattered leg. Trammel was initially hospitalized in Yuma, Arizona, where two surgeries were performed on his leg; Trammel was later admitted to a hospital in Flagstaff, where two additional surgeries were performed. According to his mother, Trammel missed several weeks of school and, as a result, received failing grades in many of his classes.

3

B. *Trial Court Proceedings*

On June 11, 2008, Watson pled guilty to one count of driving a motor vehicle with a BAC in excess of 0.08 percent and causing bodily injury. (Veh. Code, § 23153, subd. (b).) The trial court placed Watson on formal probation and, as a condition of probation, ordered that Watson pay Trammel restitution.

Trammel initially submitted $102,462.72 in medical bills to the probation department. Watson objected to that amount as her restitution obligation.

By virtue of requests for continuances and Watson's own repeated failures to appear, the restitution hearing did not occur until March 22, 2012.

At the hearing, the People presented $96,182.69 in medical billings.

For her part, Watson presented expert testimony from a retired California Highway Patrol Officer who had investigated approximately 11,000 accidents during his 30-year career. Based on his review of the statements Watson, Trammel and other witnesses had provided, the expert concluded Trammel was 25 to 30 percent at fault for the accident. He based his estimate of fault on Trammel's statement that he veered to the left instead of the right when he saw Watson coming toward him; he also faulted Trammel for failing to have any formal training on the quad.

On cross-examination, the expert conceded he did not do any accident reconstruction in the case, had never done any accident reconstruction while working for the highway patrol and had never assigned a percentage of fault in any of his investigations. The expert also conceded he had not used any kind of mathematical computation in arriving at his conclusion that Trammel was 25 to 30 percent at fault.

4

Finally, the expert admitted that in calculating Watson's percentage of fault, he had not taken into account Watson's inability to complete a field sobriety test at the scene of the accident. In addition to testimony from her expert, Watson filed a memorandum of points and authorities that in pertinent part argued that the trial court could reduce any restitution by whatever percentage of fault the trial court attributed to Trammel.

The trial court ordered that Watson pay all of the Trammel's medical expenses. In declining to reduce the amount of restitution by any percentage of fault attributable to Watson, the court stated:

"Well, we have the testimony of the qualified expert who viewed this from the perspective of reports, analysis, and gave us a figure of 25 to 30 percent. I can understand where that came from, and it appears to be quite logically derived. However, I believe that the analysis in a criminal case may be different than one in a civil case. And in a civil case, you are basically breaking down numbers and assigning percentages based on the individual's conduct.

"Here we have a plea to Section 25153(b), I believe. And what that means is that the defendant was driving under the influence of alcohol and caused injury. *In this case, she overtook a vehicle that was ahead of her and basically ran it down.* It seems to me that the fact that she has pled guilty to that offense and is therefore guilty of that violation of law is an overriding consideration.

"The accident would not have occurred had she been sober. She would have been traveling at a safer speed, been able to slow down sooner, been able to turn in the other direction, if necessary.

5

"On the other hand, Mr. Trammel was being overtaken, had to look over his shoulder at a vehicle with no lights on, and was being overtaken very rapidly. She was, at her slowest, going twice his speed.

"So I think that the analysis has to depend on what she pled to, and to me, that is such an overriding factor that I do not think that this is a comparative negligence case. And I am going to -- while I understand where the expert's figures came from, and respect that, I think in a civil case, that might be appropriate, but it is not appropriate here." (Italics added.)

As we indicated at the outset, the trial court ordered that Watson pay the $96,182.69 in medical expenses presented at the hearing, subject to the presentation of additional bills that were not available at the time of the hearing.

Watson filed a timely notice of appeal.

DISCUSSION

I

On appeal, Watson contends the trial court abused its discretion in failing to reduce the amount of its restitution order by the percentage of fault her expert attributed to Trammel. We find no abuse of discretion.

A. *Victim Compensation*

In *Millard*, *supra*, 175 Cal.App.4th at pages 24-27, we summarized the constitutional and statutory provisions that require the victims of crime be given restitution: "'In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights . . . . Proposition 8 established the right of crime victims to receive

6

restitution directly "from the persons convicted of the crimes for losses they suffer." (Cal. Const., art. I, § 28, subd. (b).)' [Citation.] At the time of the judgment in this case in 2006, article I, section 28, subdivision (b), of the California Constitution provided: 'It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to restitution from the persons convicted of the crimes for losses they suffer. [¶] Restitution shall be ordered from the convicted persons in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss, unless compelling and extraordinary reasons exist to the contrary.'

"In implementing Proposition 8, the Legislature enacted Penal Code section 1202.4, which provides:

"'(a)(1) It is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime. [¶] . . . [¶]

"'(3) The court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay . . . the following: [¶] . . . [¶] (B) Restitution to the victim or victims, if any, in accordance with subdivision (f), which shall be enforceable as if the order were a civil judgment. [¶] . . . [¶]

"'(f) . . . [I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss

7

cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record. . . .

"'(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. . . .

"'(2) Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of any third party. . . .

"'(3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶]

"'(B) Medical expenses. [¶] . . . [¶]

"'(D) Wages or profits lost due to injury incurred by the victim . . . . [¶] . . . [¶]

"'(H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim. [¶] . . . [¶]

"'(g) The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states those reasons on the record.' Penal Code section 1202.4 provides for full restitution of victims' *economic* losses, but 'does not authorize direct restitution for noneconomic losses. [Citation.]' [Citation] '[D]irect

8

victims of crime have a statutory right to restitution on the full amount of their losses without regard to the full or partial recoupment from other sources (except the state Restitution Fund). [Citation.]' [Citation.]

"At a victim restitution hearing, a prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has [i.e., the People have] made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than that claimed by the victim. [Citations.]' [Citation.]"

"'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] "'Where there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.'" [Citations.]' [Citation.] However, a restitution order 'resting upon a "'demonstrable error of law'" constitutes an abuse of the court's discretion. [Citation.]' [Citation.] 'In reviewing the sufficiency of the evidence [to support a factual finding], the "'power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] "If the circumstances reasonably justify the [trial court's] findings," the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the

9

evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact. [Citation.]' [Citation.]"

In *Millard*, the defendant was convicted by a jury of driving under the influence of alcohol and causing bodily injury. (Veh. Code, § 23153, subd. (a).) At trial, evidence was presented which showed that the victim, a motorcycle rider, was traveling at an excessive speed at the time of the accident and bore substantial responsibility for his own injuries. In light of that evidence, the trial court reduced the economic losses established by the victim by the 25 percent of fault it found attributable to the victim and ordered the defendant to pay, as restitution, the reduced amount. The trial court stated: "'The court does this under the concept that it should order full restitution unless it finds compelling and extraordinary reasons for not doing so.'" (*Millard*, *supra*, 175 Cal.App.4th at p. 37.)

We found no abuse of discretion or error in the trial court's use of comparative fault principles in determining the amount of restitution "when the victim's negligence was also a substantial factor in causing his or her economic losses." (*Millard*, *supra*, 175 Cal.App.4th at p. 41.)

B. *Amends to Society, Reformation and Rehabilitation*

Importantly, in addition to providing compensation to specific victims of crimes under Penal Code section 1202.4, restitution of victims as a condition of probation is also separately authorized under Penal Code section 1203.1, subdivision (a). The restitution provided by Penal Code section 1203.1, subdivision (a), may be imposed when a trial court determines it is "fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person

10

resulting from that breach, and *generally and specifically for the reformation and rehabilitation of the probationer*." (Pen. Code, § 1203.1, subd. (j), italics added.)

In *People v. Carbajal* (1995) 10 Cal.4th 1114, 1122 (*Carbajal*), the Supreme Court determined that Proposition 8 and a predecessor to Penal Code section 1202.4, Penal Code former section 1203.04,[1] did not limit restitution imposed under Penal Code section 1203.1 to the losses caused by the specific crime for which a defendant is convicted. In *Carbajal*, the defendant struck a parked car and left the scene without leaving his name or other information required by law. He later pled guilty to violating the hit and run statute, Vehicle Code section 20002. Because the damage he caused to the parked car was not necessarily the result of any criminality—the crime he committed occurred only after he inflicted the damage—the defendant argued he should not be required to provide the owner of the car with restitution.

The Supreme Court rejected the defendant's contention. "There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. [Citation.]" (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.) More particularly, the court determined: "[N]othing in Proposition 8 or in Penal Code section 1203.04 purports to limit or abrogate the trial court's discretion, under Penal Code section 1203.1, to order restitution as a condition of probation where the victim's loss was not the result of the crime underlying the defendant's conviction, but

_____

[1] See *People v. Slattery* (2008) 167 Cal.App.4th 1091, 1096, fn. 2.

where the trial court finds such restitution will serve one of the purposes set out in Penal Code section 1203.1, subdivision (j). [Citation.]" (*Carbajal*, at p. 1122.) Rather, because of the broader goals of restitution provided by Penal Code section 1203.1, restitution may be imposed under that section whenever it is "reasonably related either to the crime of which the defendant is convicted or to future criminality." (*Carbajal*, at p. 1123.)

With respect to the relationship between restitution and the crime of hit and run, the court noted that the crime of fleeing the scene of an accident imposes costs on all law-abiding drivers in the form of increased insurance premiums and that "[t]*he lack of a precise fit between the costs of the crime and the amount of restitution ordered does not render the restitution order invalid . . . .*" (*Carbajal*, *supra*, 10 Cal.4th at p. 1124, italics added.)

With respect to the goal of rehabilitation, the court stated: "[A] trial court could properly determine restitution would serve a salutary rehabilitative purpose by directing the defendant to accept the social responsibility he attempted to evade when he fled the scene without identifying himself. Conditioning probation on restitution under these circumstances would serve the rehabilitative purposes specified in Penal Code section 1203.1." (*Carbajal*, *supra*, 10 Cal.4th at p. 1125, fn. omitted.)

C. *Analysis*

In *Millard*, the trial court expressly relied on the compelling and extraordinary exception to the full victim restitution otherwise required by Penal Code section 1202.4, subdivision (g). Thus, under *Millard*, a trial court may, in an extraordinary case, find

12

reasons to limit the full restitution otherwise required to an amount commensurate with the defendant's comparative fault discretion. (See *Millard*, *supra*, 175 Cal.App.4th at pp. 36-41.) However, nothing in our opinion in *Millard requires* a trial court to apply civil comparative fault principles in any criminal case, even where a conviction is based on a defendant's criminal negligence or recklessness.

Importantly, *Carbajal* holds that in addition to providing compensation for a particular crime victim, restitution may be imposed for the separate purposes of requiring that a probationer make amends to society in general and to promote the defendant's rehabilitation. (*Carbajal*, *supra*, 10 Cal.4th at p. 1123.) A victim's own fault has little, if any, bearing on either the need for a defendant to make amends to the public or the goal of promoting the defendant's rehabilitation. In light of *Carbajal*, it is plain that, as the trial court here stated, the comparative fault principles that may be appropriate in a civil case are in no sense mandatory in a criminal proceeding. Thus, we reject Watson's contention that the trial court misstated or misapprehended the law in any respect.

Moreover, the record here fully supports the trial court's unwillingness to treat this as the sort of extraordinary case where the victim's comparative fault might reduce the amount of restitution otherwise required under Penal Code sections 1202.4 and 1203.1. Trammel's conduct was in no sense a substantial factor in causing the accident. In particular, we note that, unlike the victim we considered in *Millard*, Trammel was not engaged in any unlawful or dangerous driving at the time of the accident but was only subject to criticism from Watson's expert because, in reacting to a hazard created solely by Watson, he veered left instead of right. Trammel's error in reacting, unlike the

13

excessive speed of the victim in *Millard*, was not a significant factor in causing the accident and was not blameworthy. As the trial court determined, Watson basically ran Trammell down with her much bigger and unlighted vehicle, and the accident would not have occurred if she had been sober.

The trial court's imposition of full restitution of Trammel's economic losses is also supported by the need for Watson to make amends to the public for the very real costs law enforcement and emergency personnel expended in responding to the accident and Trammel's serious injuries. Like the increased insurance rates all members of the public pay because of hit and run drivers, which the court in *Carbajal* discussed, the public in general also pays for the substantial emergency response costs continually imposed by drunk drivers. By imposing full, rather than partial, restitution, the trial court required some amends from Watson for her violation of law and the very real costs that violation imposed on the public.

In addition, full restitution was warranted by Watson's obvious need for rehabilitation. At the time of the accident, her BAC was more than twice the legal limit and she could not complete a field sobriety test. The need to impress upon Watson the seriousness of her conduct and its very real cost is manifest here and by itself supports the trial court's restitution order.

Thus, we find that the trial court did not abuse its discretion in ordering that Watson pay all of Trammell's economic losses.

## II

We also reject Watson's contention the trial court did not have jurisdiction to order

restitution because it did not do so at the time of sentencing.

Penal Code section 1202.4, subdivision (f) states: "If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court." Thus, "[u]nder a reading of the plain language of section 1202.4, if the court cannot determine the amount of restitution at the time of sentencing, there is no limitation upon when the court must next set a restitution hearing, nor is there a limitation on the permissible reasons that may prevent fixing the amount of restitution." (*People v. Bufford* (2007) 146 Cal.App.4th 966, 971; see also *People v. Ford* (2013) 217 Cal.App.4th 1354, 1357.) Here, the record shows the prosecution sought repeatedly to fix the amount of restitution, but Watson objected and then either sought continuances of the hearing or failed to appear, which required that bench warrants be issued. The court had good reason to delay, at Watson's instance, the restitution hearing and jurisdiction to conduct the hearing when it did.

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

WE CONCUR:

NARES, J.

IRION, J.

15